**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gerard Gary GARCIA, Defendant–Appellant.**

**No. 88–2557.**

United States Court of Appeals, Tenth Circuit.

Dec. 29, 1989.

---

Stephen P. McCue, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Joe M. Romero, Jr., Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before ANDERSON and EBEL, Circuit Judges, and RUSSELL, District Judge.*

EBEL, Circuit Judge.

This case requires us to consider whether the guidelines promulgated by the United States Sentencing Commission apply to violations of the Assimilative Crimes Act.[1] We conclude that the sentencing guidelines apply to assimilative crimes, but that the

---

\* The Honorable David L. Russell, United States District Judge for the Western District of Oklahoma, sitting by designation.

1. The Assimilative Crimes Act provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punished if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13 (1982) (current version at 18 U.S.C. § 13(a) (1988)).

sentence imposed may not exceed any maximum sentence and may not fall below any mandatory minimum sentence that is required under the law of the state in which the crimes occur. We further hold that the commentary to § 2X5.1 of the sentencing guidelines, which "require[s]" courts to apply guidelines applicable to analogous federal crimes in determining sentences for assimilative crimes, has no legal effect to the extent that it exceeds the less-restrictive mandate of the Sentencing Reform Act of 1984 to give only "due regard" to analogous federal sentencing guidelines. Finally, we conclude that the district court's guidelines sentence in this case is permissible because it is within the range permitted under New Mexico law.

### Facts

■ On December 7, 1987, defendant Gerard Gary Garcia, an American Indian, struck and killed an American Indian pedestrian while driving a pickup truck on the Acoma Pueblo Reservation. The accident was caused, at least in part, by defendant's use of alcohol. R. Vol. II at 9. Defendant pled guilty to the assimilative New Mexico crime of involuntary manslaughter,[2] in violation of 18 U.S.C. § 13 (1982).[3] Prior to the entry of his guilty plea, defendant filed a motion asking the court to declare unconstitutional the Sentencing Reform Act of 1984, as amended, 18 U.S.C. §§ 3551–3586 (Supp. IV 1987) (current version at 18 U.S.C. §§ 3551–3586 (1988)) & 28 U.S.C. §§ 991–998 (Supp. IV 1987). R. Doc. 7. The district court granted the motion, concluding that the Sentencing Reform Act violated the constitutional principle of separation of powers and expressing an additional concern that the guidelines violated the Due Process Clause. R. Doc. 40. The district court then sentenced defendant to an 18–month prison term pursuant to the sentencing law in effect prior to the Sentencing Reform Act of 1984. However, the district court also imposed an alternative sentence pursuant to the Sentencing Reform Act, to take effect if the Act was found to be constitutional. The alternative sentence was a prison term of 18 months, plus one year of supervised release, during which defendant would be required to undergo rehabilitation for alcohol abuse. R. Doc. 41. Because the guidelines have been held to be constitutional, the alternative guidelines sentence is the sentence that must be applied against defendant.[4]

---

2. N.M.Stat.Ann. § 30–2–3(B).

3. Defendant's guilty plea and the July 15, 1988 information upon which his guilty plea is based state that defendant's conduct also amounted to a violation of the Indian Major Crimes Act, 18 U.S.C. § 1153. Section 1153 provides, in relevant part:

> (a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, ..., and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
> (b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153 (Supp. V 1987) (current version at 18 U.S.C. § 1153 (1988)).

We are unable to determine whether the district court based its sentence on the Indian Major Crimes Act or on the Assimilative Crimes Act, since the sentence refers to both. However, both parties treat the sentence as having been based on the Assimilative Crimes Act. We accept that characterization for purposes of this opinion because of our conclusion that the sentencing guideline for the federal crime of involuntary manslaughter would be appropriately applied to determine the sentence for the assimilative New Mexico crime of involuntary manslaughter. Thus, the sentence would be the same under either 18 U.S.C. § 13 or 18 U.S.C. § 1153.

4. The Government argues that this case may be moot because the Bureau of Prisons had issued an Operations Memorandum dated February 2, 1989, which suggested that the Bureau would, on an interim basis, apply the non-guidelines sentence in a situation where a court had imposed both a non-guidelines sentence and an alternative guidelines sentence. Appellee's Br. at 4. However, the district court's judgment in this case explicitly provided that the alternative guidelines sentence would apply "in the event the Sentencing Reform Act of 1984 is found to be constitutional." R.Doc. 41. In light of the Supreme Court's decision that the Sentencing Reform Act does not violate the separation-of-

*Discussion*

I. *The Purposes of the Assimilative Crimes Act and the Sentencing Reform Act of 1984*

The Assimilative Crimes Act applies to offenses committed on Indian reservations. *United States v. Pinto*, 755 F.2d 150, 154 (10th Cir.1985). "The purpose of the Assimilative Crimes Act is to provide a method of punishing a crime committed on government reservations in the way and to the extent that it would have been punishable if committed within the surrounding jurisdiction. The Act fills in gaps in federal criminal law by providing a set of criminal laws for federal enclaves." *United States v. Sain*, 795 F.2d 888, 890 (10th Cir.1986) (citation omitted). *See also United States v. Sharpnack*, 355 U.S. 286, 293, 78 S.Ct. 291, 295, 2 L.Ed.2d 282 (1958); *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 101, 60 S.Ct. 431, 434, 84 L.Ed. 596 (1940); *United States v. Press Publishing Co.*, 219 U.S. 1, 10, 31 S.Ct. 212, 214, 55 L.Ed. 65 (1911).

The Sentencing Reform Act of 1984 was enacted to achieve greater uniformity in the sentencing of federal crimes. Its provisions "are designed to structure judicial sentencing discretion, eliminate indeterminate sentencing, phase out parole release, and make criminal sentencing fairer and more certain." S.Rep. No. 225, 98th Cong., 2d Sess. 65, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3248. The Sentencing Reform Act provides that "[e]xcept as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute ... shall be sentenced in accordance with the provisions of this chapter." 18 U.S.C. § 3551(a) (Supp. V 1987) (current version at 18 U.S.C. § 3551(a) (1988)). In the case of assimilative crimes, it is diffi-

cult to achieve fully the Sentencing Reform Act's goal of federal sentencing uniformity because the punishments for particular state offenses often vary significantly among the states. Therefore, it is not always possible to achieve uniformity in federal sentences for similar assimilative crimes that are committed in different states, and, at the same time, promote the Assimilative Crime Act's goal of intrastate sentencing uniformity.

The guidelines adopted pursuant to the Sentencing Reform Act do not adequately take into account the tension between the two policies of federal sentencing uniformity and intrastate sentencing uniformity. The guidelines focus primarily on the goal of federal sentencing uniformity. The commentary to § 2X5.1 of the guidelines provides that in the case of assimilative crimes, the court imposing the sentence "is required to determine if there is a sufficiently analogous offense guideline, and, if so, to apply the guideline that is most analogous." Although applying analogous federal guidelines in determining sentences for assimilative crimes promotes federal sentencing uniformity, it ignores entirely the objective of intrastate sentencing uniformity underlying the Assimilative Crimes Act.

Where two statutes are " ' "capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." ' " *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815 (1985) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 133–34, 95 S.Ct. 335, 353–54, 42 L.Ed.2d 320 (1974) (quoting *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974))). *See also* 2A

powers principle, *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), and this court's holding that the Act does not violate the Due Process Clause, *United States v. Thomas*, 884 F.2d 540 (10th Cir.1989), the alternative guidelines sentence is the one that must be applied under the express terms of the district court's judgment. Therefore, the case is not moot. Moreover, a memorandum dated February 1, 1989, from Assistant Attorney General Edward S.G. Dennis, Jr., the head of the Criminal Division of the United States Department of Justice, indicated that a consensus had been reached within the Department of Justice, including the Bureau of Prisons, to the effect that if a court imposed an alternative sentence based on the guidelines, the Bureau of Prisons would apply that alternative guidelines sentence.

J. Sutherland, Statutes and Statutory Construction § 51.02 (C. Sands 4th ed. rev. 1984). Here, the Sentencing Reform Act expressly authorizes courts to interpret it so as to achieve harmony, to the extent possible, with other statutes. The Sentencing Reform Act states that its provisions apply "[e]xcept as otherwise specifically provided." 18 U.S.C. § 3551(a). We conclude that the Assimilative Crimes Act "specifically provide[s]," within the meaning of 18 U.S.C. § 3551(a), that the sentencing for assimilative crimes is to be determined in accordance with state law so that the defendant is "subject to a like punishment." 18 U.S.C. § 13.

However, state law generally specifies only the outer maximum and minimum sentences that a judge may impose and vests with the judge considerable discretion to determine an appropriate sentence within those limits. Within the permitted range, it is impossible to determine with certainty the sentence that a state judge would impose. As a result, the Assimilative Crimes Act's goal of intrastate sentencing uniformity is inherently limited by the lack of specificity of state sentencing law. It is within this permitted range that the Sentencing Reform Act of 1984 and the sentencing guidelines may act to promote federal uniformity.

■ Federal judges, like their state counterparts, can only be required to impose sentences for assimilative crimes that fall within the maximum and minimum terms permitted under state law. Efforts to duplicate every last nuance of the sentence that would be imposed in state court has never been required. For example, federal courts need not follow state parole policies, including provisions for good time credits. See, e.g., United States v. Binder, 769 F.2d 595, 600 (9th Cir.1985); Pinto, 755 F.2d at 154; United States v. Vaughan, 682 F.2d 290, 294–95 (2d Cir.), cert. denied, 459 U.S. 946, 103 S.Ct. 261, 74 L.Ed.2d 203 (1982); United States v. Smith, 574 F.2d 988, 992–93 (9th Cir.), cert. denied, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978). In addition, Congress has expressly made applicable to assimilative crimes

the federal provision requiring that a special monetary assessment be imposed on convicted persons. 18 U.S.C. § 3013(d) (Supp. V 1987) (current version at 18 U.S.C. § 3013(d) (1988)). Therefore, we hold that the Assimilative Crimes Act requires courts to impose sentences for assimilative crimes that fall within the maximum and minimum terms established by state law. However, within the range of discretion permitted to a state judge, a federal judge should apply the federal sentencing guidelines to the extent possible.

■ In addition to the exception clause of § 3551(a), discussed above, the Sentencing Reform Act also provides that where there is no applicable sentencing guideline, the court is to have "due regard" for sentences prescribed by the guidelines for similar offenses and offenders. 18 U.S.C. § 3553(b) (Supp. V 1987) (current version at 18 U.S.C. § 3553(b) (1988)). The use of the phrase "due regard" suggests that Congress recognized that, in the absence of an applicable guideline for a particular crime, courts should not automatically apply the guidelines for similar offenses. In contrast, the commentary to § 2X5.1 of the guidelines requires courts to apply "sufficiently analogous" guidelines. The commentary is too restrictive and is not authorized by the statute. Therefore, we hold that to the extent the commentary to § 2X5.1 exceeds the statutory mandate to have "due regard" for analogous sentencing guidelines, the commentary is of no legal effect.

Our views expressed herein are in agreement with the few cases that have considered similar issues. Two cases have agreed that the Sentencing Reform Act does not manifest a clear intent to repeal the "like punishment" clause of the Assimilative Crimes Act. United States v. Richards, No. 88–9005M–01 (D.Kan. Oct. 21, 1988) (magistrate's memorandum and order) (available on Westlaw at 1988 WL 123140; available on Lexis at 1988 U.S. Dist.LEXIS 15101); United States v. Policastro, No. 89–244M–3 (E.D.N.C. July 11, 1989) (magistrate's memorandum and order). A third case has noted that "while

the reforms enacted by the Sentencing Reform Act are broad, there are circumstances in which a defendant convicted in a federal district court is not properly sentenced under the guidelines." *United States v. Norquay,* 708 F.Supp. 1064, 1066 (D.Minn.1989) (concluding that the Sentencing Reform Act does not clearly express an intent for defendants convicted of crimes under the Indian Major Crimes Act to be sentenced under the federal sentencing guidelines instead of the provisions of the Major Crimes Act).

This court considered a similar situation in *United States v. Dunn,* 545 F.2d 1281 (10th Cir.1976). In *Dunn,* the court considered whether state sentencing law or the Youth Corrections Act, 18 U.S.C. § 5010 (repealed 1984), governed the sentencing of an assimilative crime committed by a youth offender. The court concluded that a federal court may apply the Youth Correction Act in determining the sentence for an assimilative crime, but, in order to ensure that the purposes underlying the Assimilative Crimes Act are honored, the sentence may not exceed the maximum period allowed under relevant state law. *Dunn,* 545 F.2d at 1283. By following that approach, the court was able to "give[ ] maximum comfort to the basic intent of Congress as contained in" the Youth Corrections Act and the Assimilative Crimes Act. *Id.*

## II. *The District Court's Guidelines Sentence*

In light of our earlier holding that the sentences for assimilative crimes must fall within the maximum and minimum terms provided for under state law, we now proceed to consider whether the district court's guidelines sentence in this case is within the range permitted under New Mexico law. New Mexico law provides for a "basic sentence" of 18 months for involuntary manslaughter. N.M.Stat.Ann. § 31–18–15(A). However, New Mexico judges are authorized to alter the basic sentence based on "any mitigating or aggravating circumstances surrounding the offense or concerning the offender." N.M. Stat.Ann. § 31–18–15.1(A). The amount of that alteration cannot exceed one-third of the basic sentence. N.M.Stat.Ann. § 31–18–15.1(C). The guideline for the federal crime of involuntary manslaughter, which was apparently applied by the district court in determining its alternative guidelines sentence, provides for a base offense level of 14 for involuntary manslaughter resulting from conduct that was reckless.[5] The sentences for crimes with a base offense level of 14 range from 15 months to 46 months, depending on various aggravating and mitigating factors.

 Although New Mexico does preclude the consideration of certain aggravating circumstances in imposing sentence, appellant has made no showing here that the district court improperly considered any of those circumstances in computing his sentence under the guidelines.[6] The district court in this case applied the mitigating and aggravating factors provided in the Sentencing Reform Act and the guidelines in determining the guidelines sentence and arrived at a sentence of 18 months, plus one year of supervised release. Because the 18–month sentence is clearly within the range permitted under New Mexico law, it is consistent with the policy of intrastate sentencing uniformity underlying the Assimilative Crimes Act. Because the sentence is based on an application of the sentencing guidelines, it also furthers the objectives of federal uniformity underlying the Sentencing Reform Act. Further, New Mexico law

5. The commentary to § 2A1.4 provides that "[a] homicide resulting from driving ... while under the influence of alcohol or drugs ordinarily should be treated as reckless."

6. N.M.Stat.Ann. § 31–18–15.1(B) provides that the sentencing judge "shall not consider the use of a firearm or prior felony convictions as aggravating circumstances for the purpose of altering the basic sentence." Presumably, the purpose of § 31–18–15.1(B) is to take into account the fact that other New Mexico statutory provisions provide for specific sentence enhancements based on the use of a firearm and prior felony convictions. *See* N.M.Stat.Ann. §§ 31–18–16, 31–18–16.1, 31–18–17. Appellant was not charged here with any assimilative crime based on those specific enhancement provisions.

provides for a mandatory one-year parole term for persons convicted of involuntary manslaughter. *See* N.M.Stat.Ann. § 30–2–3(B) (defining involuntary manslaughter as a fourth-degree felony); N.M. Stat.Ann. 31–21–10(C) (requiring one-year parole term for persons convicted of a fourth-degree felony). Therefore, the guidelines sentence imposed by the district court was lawful.

In sum, we hold that the Assimilative Crimes Act falls within the exception clause of 18 U.S.C. § 3551(a). Therefore, a sentence for an assimilative crime must satisfy the "like punishment" clause of the Assimilative Crimes Act, which requires that the sentence fall within the maximum and minimum terms provided under state law. We further hold that the commentary to § 2X5.1 of the guidelines, which "require[s]" courts to apply analogous guidelines in sentencing assimilative crimes, has no legal effect to the extent that it exceeds the less-restrictive mandate of the Sentencing Reform Act to have "due regard" for analogous sentencing guidelines. Finally, we conclude that the district court's guidelines sentence in this case was permissible because it is within the range permitted under New Mexico law and because it is apparently based on analogous guidelines and falls within the range of discretion permitted by state law. Therefore, the September 23, 1988 judgment of the district court is AFFIRMED.[7]

---

**7.** We note that defendant raised the issue of whether the sentencing guidelines apply to assimilative crimes for the first time on appeal. Therefore, if we had concluded that the district court erred in sentencing defendant, we would have had to address whether the district court committed a "plain error[ ]" that would warrant reversal under Fed.R.Crim.P. 52(b). However, in light of our conclusion that the district court did not err in sentencing defendant, there is no plain-error issue to decide.