UNITED STATES of America, Plaintiff–Appellee,

v.

Larry G. THOMAS, Defendant–Appellant.

No. 94–3280.

United States Court of Appeals, Tenth Circuit.

Oct. 17, 1995.

Charles D. Dedmon, Assistant Federal Public Defender for the District of Kansas (David J. Phillips, Federal Public Defender, with him on the briefs), Topeka, Kansas, for Defendant–Appellant.

Blair Watson, Assistant U.S. Attorney (Randall K. Rathbun, United States Attorney, and Leon J. Patton, Assistant U.S. Attorney, on the brief), District of Kansas, Kansas City, Kansas, for Plaintiff–Appellee.

Before TACHA, LOGAN and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

This direct criminal appeal involves the interplay between the Assimilative Crimes Act (ACA), 18 U.S.C. § 13, requiring the application of state law, and the Sentencing Reform Act of 1984. The case arises in the context of punishment for a misdemeanor when the state law and the federal sentencing guidelines treat home detention differently.

In April 1992 defendant Larry G. Thomas pleaded guilty to a charge of driving under the influence (DUI), in violation of Kan.Stat. Ann. § 8–1567 as charged under the ACA. He committed the offense, a Class B misdemeanor, on the Fort Leavenworth (Kansas) military reservation. The magistrate judge sentenced him to probation with payment of a fine, performance of public service, and other conditions. In March 1993, however, the magistrate judge determined that defendant had violated the terms of his probation and extended probation for one year. This resentencing also included a six-month period of home detention with electronic monitoring. Although defendant successfully completed the home detention, he violated probation a second time. Therefore, in January 1994 the magistrate judge extended the probationary period for another six months and ordered defendant to perform additional hours of public service.

Defendant then violated the terms of his probation a third time, after which the magistrate judge revoked probation and sentenced him to a ninety-day period of incarceration. Defendant appealed to the district court under Fed.R.Crim.P. 58(g)(2), arguing that because he completed six months in home detention that he had already served the six-month statutory maximum sentence permitted under the Kansas statute. He argued that the federal sentencing guidelines credit home detention as incarceration and thus the magistrate judge imposed an illegal sentence.

The district court affirmed the magistrate judge on alternative grounds. It held that 18 U.S.C. § 3585(b) gives the Bureau of Prisons primary authority to calculate sentencing credit and defendant therefore must exhaust his remedies with the Bureau of Prisons before seeking judicial review. Alternatively, the district court determined that if it did have jurisdiction defendant was not entitled to credit because Kansas law does not treat home detention as incarceration.

■■■ We are satisfied that if defendant has already served the statutory maximum term of incarceration under the applicable sentencing scheme, additional incarceration would constitute an illegal sentence. This court has jurisdiction to review illegal sentences. *United States v. Saucedo,* 950 F.2d 1508, 1516–17 (10th Cir.1991) (citing *United States v. Morgan,* 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954)). It follows that on review of the magistrate judge's decision the district court had jurisdiction to determine whether the six months home detention defendant served constituted imprisonment that would foreclose the additional incarceration ordered by the magistrate judge. We turn to that issue.

■■ In arguing that his sentence is illegal defendant points to 18 U.S.C. § 3551 and its requirement that sentences be in accordance with "this chapter." Section 3551(a) reads as follows:

(a). *In general. Except as otherwise specifically provided,* a defendant who has been found guilty of an offense described in any Federal Statute, including sections 13 and 1153 of this title, other than an Act of Congress applicable exclusively in the District of Columbia or the Uniform Code of Military Justice, *shall be sentenced in accordance with the provisions of this chapter* so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

(Emphasis added.) That "chapter" includes §§ 3563(b)(20) and 3583(e)(4) which permit home detention as an alternative to incarceration. Defendant also points to U.S.S.G. §§ 5F1.2 and 5B1.4(b)(20) which permit home detention as a condition of probation "but only as a substitute for imprisonment,"

and to U.S.S.G. § 5C1.1(e)(3) which equates one day of home detention to one day of imprisonment.

This case, however, involves the ACA. "The purpose of the Assimilative Crimes Act is to provide a method of punishing a crime committed on government reservations in the way and to the extent that it would have been punishable if committed within the surrounding jurisdiction." *United States v. Sain,* 795 F.2d 888, 890 (10th Cir.1986). Defendant was charged under § 13(a) of the ACA, which reads:

> (a) Whoever ... is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). Although the Sentencing Reform Act of 1984, which provided the statutory framework for the sentencing guidelines, aimed to provide greater uniformity in federal sentencing, it did not initially reference the ACA. In 1990, however, Congress amended the Act to explicitly incorporate § 13, which is now referenced in 18 U.S.C. § 3551(a). Thus, the sentencing guidelines and the ACA are intended to coexist in a meaningful and effective fashion. *See United States v. Harris,* 27 F.3d 111, 115 (4th Cir.1994).

The sentencing guidelines and the ACA are not always easily reconciled. In *United States v. Garcia,* 893 F.2d 250 (10th Cir. 1989), decided before the 1990 amendment, we stated that

> In the case of assimilative crimes, it is difficult to achieve fully the Sentencing Reform Act's goal of federal sentencing uniformity because the punishments for particular state offenses often vary significantly among the states. Therefore, it is not always possible to achieve uniformity in federal sentences for similar assimilative crimes that are committed in different states, and, at the same time, promote the

Assimilative Crimes Act's goal of intrastate sentencing uniformity.

*Id.* at 253. We held that the guidelines apply to ACA cases, "but that the sentence imposed may not exceed any maximum sentence and may not fall below any mandatory minimum sentence that is required under the law of the state in which the crimes occur." *Id.* at 251–52.

Our task is eased in the instant case because "[t]he sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction." U.S.S.G. § 1B1.9. Without distinguishing between state or federal statutes the application note states, "[T]he court may impose any sentence *authorized by statute* for each count that is a Class B or C misdemeanor or an infraction," *id.* comment. (n. 1) (emphasis added). This application note also contains definitions for Class B and C misdemeanors. The background information provides: "[f]or the sake of judicial economy, the Commission has exempted all Class B and C misdemeanors and infractions from the coverage of the guidelines." *Id.* comment. (backg'd.). We believe that § 3551(a) and § 1B1.9 of the sentencing guidelines compel the conclusion that the guidelines do not apply to the sentence at issue in the instant case. *See United States v. Gibson,* 896 F.2d 206, 210 (6th Cir.1990) (rejecting argument that U.S.S.G. § 3D1 addressing multiple convictions applies when sentencing for Class B and C misdemeanors).

We are not impressed by defendant's several arguments concerning the impracticality of referring a federal court to state law in circumstances like the instant case. We see no "incredible bureaucratic difficulty," Brief of Appellant at 15, when the court is only dealing with Class B and C misdemeanors— which by definition involve incarceration of no more than six months. The Commission exempted Class B and C misdemeanors from guideline coverage "[f]or the sake of judicial economy," U.S.S.G. § 1B1.9 comment. (backg'd.), apparently concluding that district courts would save time by imposing statutory sentences in certain cases. A defendant's original sentence for such a crime will generally be a straightforward proposition, and the

short time of possible incarceration greatly diminishes the likelihood of probation revocation and resentencing proceedings.

As to defendant's attempted distinction between sentencing and postsentencing orders, U.S.S.G. § 1B1.9 does not distinguish between original sentence and postsentencing proceedings. Whether the punishment is imposed initially or modified after a probation violation does not alter the essential character of the sentence as a consequence for a conviction.

Regarding defendant's argument that applying state law invites the sentencing disparity that the Sentencing Reform Act was intended to abolish, we answer that one of the purposes of the ACA is to punish a crime "committed on government reservations in the way and to the extent it would have been punishable if committed within the surrounding jurisdiction." *Sain,* 795 F.2d at 890. The uniformity sacrificed at § 1B1.9 must be viewed in the context of the limited discretion available for sentencing Class B and C misdemeanors, and the heightened uniformity of those sentences with others imposed for the same crime in the surrounding jurisdiction. Thus we are satisfied that we should look to Kansas law to determine whether the sentence imposed is consistent with the Kansas sentencing scheme.

Defendant was originally sentenced under Kan.Stat.Ann. § 8–1567(d). *See also id.* § 21–4502(1)(b) (Class B misdemeanor carries maximum six-month sentence). Kansas law states that probation for a misdemeanor may not exceed two years, and may be extended for additional fixed periods not to exceed two years. *Id.* § 21–4611(a). Home detention is authorized in circumstances such as the instant case. *Id.* § 21–4603b; *see also id.* § 21–4603(b)(7). The magistrate judge, therefore, acted properly in both extending defendant's probation and imposing home detention.

Further, the Kansas courts have acknowledged that their sentencing procedures contemplate that a defendant's original sentence of probation, or probation plus incarceration, may exceed the statutory maximum period of incarceration. *State v. Wells,* 18 Kan.App.2d 735, 861 P.2d 828, 830 (1993) (approving a sixty-day prison term plus eighteen-month probationary period as not an abuse of discretion, after Class B misdemeanor conviction carrying maximum six-month prison term).

Finally, Kansas law is clear that a period of home detention is not the same as a term of imprisonment. *State v. Scherzer,* 254 Kan. 926, 869 P.2d 729, 737 (1994). Kansas Statutes Annotated § 21–4614a omits home detention from the types of confinement to be credited toward a sentence as time already served. *State v. Williams,* 18 Kan.App.2d 424, 856 P.2d 158, 162 (1993) (analyzing the 1988 legislative changes that added the home detention option in § 21–4603b and the sentence credit provisions at § 21–4614a). Therefore, the district court properly concluded that neither the federal statutes nor the federal sentencing guidelines prohibit the imposition of the ninety-day imprisonment ordered by the magistrate judge.

This conclusion essentially moots the exhaustion question. The district court properly held that the Bureau of Prisons awards credits after defendant begins his sentence. *See United States v. Jenkins,* 38 F.3d 1143, 1144 (10th Cir.1994) (district court lacks jurisdiction to award sentence credit; rather Bureau of Prisons does so *after* sentencing, even if the government fails "to inform the district court that the Bureau of Prisons was the sole forum for computation of a credit"). The government acknowledges that under Kansas law defendant is entitled to credit toward his ninety-day sentence for time served in drug treatment and for that portion of his sentence already served. The district court ordered a stay of execution of defendant's sentence to avoid his having served the entire sentence before we could decide his appeal. We will not presume that the Bureau of Prisons will improperly deny defendant credit for time served, but that aided by the guidance of this opinion it will promptly and properly award the credits to which defendant is entitled.

AFFIRMED.