**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 08-4900**

───────────

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

JAMES S. PEEBLES,

                Defendant - Appellant.

───────────

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (5:07-cr-00041-RLV-DCK-1)

───────────

Argued: January 27, 2010        Decided: March 19, 2010

───────────

Before WILKINSON, DUNCAN, and DAVIS, Circuit Judges.

───────────

Reversed and remanded with instructions by unpublished opinion. Judge Duncan wrote the majority opinion, in which Judge Davis concurred. Judge Wilkinson wrote a dissenting opinion.

───────────

**ARGUED:** David Grant Belser, BELSER & PARKE, Asheville, North Carolina, for Appellant. Donald David Gast, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Edward R. Ryan, Acting United States Attorney, Charlotte, North Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This appeal arises from a prosecution under the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13. After pleading guilty to the offense of aggravated speeding to elude arrest under N.C. Gen. Stat. § 20-141.5, Appellant James Peebles received a prison sentence of twelve months and one day. Because his maximum sentence under North Carolina law would have been eight months, we hold that the district court violated the ACA by not imposing "like punishment." 18 U.S.C. § 13. Accordingly, we vacate Peebles's sentence and remand for resentencing.[1]

I.

On September 9, 2007, in Alleghany County, North Carolina, James Peebles raced down the Blue Ridge Parkway on his

---

[1] We find it useful to stress the limits of our holding today. We do not, as the dissent suggests, hold that the ACA requires "identical" rather than like punishment or that Peebles's sentence must track what a North Carolina court would have imposed. See Dis. Op. at 20 (denying that Peebles's "federal sentence should be limited to the individual sentence a state judge would have imposed on him"). We merely adhere to circuit precedent finding that the ACA precludes a prison term outside the minimum and maximum that a state court could have imposed. See United States v. Pierce, 75 F.3d 173, 176 (4th Cir. 1996) (stating that under the ACA a defendant "may be sentenced only in the way and to the extent that the person could have been sentenced in state court" (internal quotations omitted)). This does not offend federal sentencing guidelines, which remain fully applicable within that range.

motorcycle, going well over the speed limit. When a National Park Service Ranger tried to stop him, Peebles tried to escape and caused a high speed chase. Using a "rolling road block," police eventually stopped and arrested him. J.A. 85.

Because this dangerous flight occurred within the special territorial jurisdiction of the United States, Peebles was prosecuted under the ACA. This statute assimilates into federal law offenses that "would be punishable if committed . . . within the jurisdiction of the State" in which the relevant federal property is located. 18 U.S.C. § 13(a). Peebles was charged with aggravated speeding to elude arrest under N.C. Gen. Stat. § 20-141.5, and he pleaded guilty. The district court sentenced Peebles to twelve months and one day imprisonment, followed by one year supervised release. This appeal followed.

## II.

On appeal, Peebles argues that the district court violated the ACA by imposing a sentence greater than North Carolina's statutory maximum. "The proper length of a sentence under the ACA is a question of law subject to de novo review." United States v. Pate, 321 F.3d 1373, 1375 (11th Cir. 2003).

The ACA provides that a person who, within the territorial jurisdiction of the United States, commits "any act . . . which, although not made punishable by any enactment of Congress, would

3

be punishable if committed . . . within the jurisdiction of the State . . . in which such place is situated . . . , shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a) (emphasis added). In light of circuit precedent interpreting the highlighted phrase, the government concedes that the ACA prohibited sentencing Peebles beyond North Carolina's statutory maximum sentence. Appellee's Br. at 11-12. See also Pierce, 75 F.3d at 176 ("[A] term of imprisonment imposed for an assimilated crime may not exceed the maximum term established by state law."); United States v. Young, 916 F.2d 147, 150 (4th Cir. 1990) ("[T]he 'like punishment' requirement of the Assimilative Crimes Act mandates that federal court sentences for assimilated crimes must fall within the minimum and maximum terms established by state law, and that within this range of discretion federal judges should apply the Sentencing Guidelines to the extent possible."). The only disputed question is how to calculate North Carolina's statutory maximum sentence. Peebles argues that it should be the highest sentence that a state court could have imposed on him. Under our precedent, we are constrained to agree.

Unlike most federal criminal statutes, section 20-141.5 defines aggravated speeding to elude arrest but does not specify the maximum or minimum penalty. Rather, it merely labels the offense "a Class H felony." N.C. Gen. Stat. § 20-141.5(b).

4

Maximum penalties are codified elsewhere under the North Carolina Structured Sentencing Act, N.C. Gen. Stat. § 15A-1340.10 et seq. Under this regime, for any felony offense, North Carolina courts have authority to sentence only within a particular range determined by three variables: (1) the class of offense, (2) the offender's prior record level, and (3) whether the sentence should be aggravated or mitigated beyond the ordinary or "presumptive" sentence. See N.C. Gen. Stat. § 15A-1340.13. The process proceeds as follows. First, courts determine the prior record level by calculating the sum of points assigned to each prior conviction according to section 15A-1340.14. Then they determine whether the sentence should be aggravated or mitigated by considering sentencing factors under section 15A-1340.16. At this stage, the government must prove aggravating factors beyond a reasonable doubt.

The government does not dispute that Peebles would qualify for prior record level I. The government also conceded during oral argument that Peebles's indictment contains insufficient allegations to support aggravating his sentence. Therefore, the highest sentence Peebles could have received under North Carolina law would have been eight months. See N.C. Gen. Stat. § 15A-1340.17(c)-(d). Peebles's presentence report reached the same conclusion:

5

The defendant has zero criminal history points in accordance with NCGS §15A-1340.14(b)(6) and thus a prior record level of I. A Class H felony combined with a level I prior record results in a presumptive range of a minimum 4 months to a maximum 8 months active imprisonment.

J.A. 93. Peebles thus concludes that North Carolina's statutory maximum sentence would be eight months. The government contends, however, that the statutory maximum sentence should be the highest sentence that could ever be imposed for the offense. This would be thirty months, i.e., the highest aggravated sentence authorized for someone with prior record level VI. See N.C. Gen. Stat. § 15A-1340.17(c)-(d). The choice between these approaches determines whether Peebles's sentence of twelve months and one day violated the ACA's "like punishment" requirement.

Given our precedent, we are constrained to adopt Peebles's contention. Pierce stated that "like punishment" under the ACA means that "one who commits an act illegal under state law but not prohibited by federal law in an area of federal jurisdiction may be sentenced only in the way and to the extent that the person could have been sentenced in state court." 75 F.3d at 176 (internal quotations omitted) (emphasis added). This language suggests that the district court's sentence should not have exceeded the maximum sentence that Peebles himself (rather than any hypothetical defendant) could have received under North

6

Carolina law. See also United States v. McManus, 236 F. App'x 855, 856 (4th Cir. 2007) (considering N.C. Gen. Stat. § 15A-1340.17 and concluding, "[w]e agree with McManus that . . . the state maximum sentence was the maximum sentence that could have been imposed on him by a state-court judge").

This conclusion also comports with the congressional purpose underlying the ACA and general principles of federalism. Dating back to 1825, the ACA was designed to fill gaps created where state criminal law became inapplicable because the federal government had reserved or acquired land. The Supreme Court explained further:

> When the[] results of the statute are borne in mind, it becomes manifest that Congress, in adopting it, sedulously considered the twofold character of our constitutional government, and had in view the enlightened purpose, so far as the punishment of crime was concerned, to interfere as little as might be with the authority of the states on that subject over all territory situated within their exterior boundaries, and which hence would be subject to exclusive state jurisdiction but for the existence of a United States reservation. In accomplishing these purposes it is apparent that the statute, instead of fixing by its own terms the punishment for crimes committed on such reservations which were not previously provided for by a law of the United States, adopted and wrote in the state law, with the single difference that the offense, although punished as an offense against the United States, was nevertheless punishable only in the way and to the extent that it would have been punishable if the territory embraced by the reservation remained subject to the jurisdiction of the state.

7

United States v. Press Publ'g Co., 219 U.S. 1, 9-10 (1911). Here the Supreme Court made clear that the ACA was never supposed to displace the outer limits on sentencing discretion imposed by state law. This underscores Pierce's implication that a defendant being prosecuted under the ACA should not receive a prison sentence that a state court would have lacked authority to impose.

Our holding today also finds support in United States v. Harris, 27 F.3d 111 (4th Cir. 1994). There, the defendant was prosecuted under the ACA for driving while impaired under N.C. Gen. Stat. § 20-138.1. This statute defined driving while impaired but, rather than specify the authorized punishment, provided that punishment should be imposed under N.C. Gen. Stat. § 20-179. Section 20-179 authorized different punishment levels depending on whether various aggravating or mitigating circumstances had been proved. Although counsel for both sides agreed on the appropriate level, we nevertheless observed: "Other subsections of § 20-179 authorize more severe punishment than that permitted by subsection (k). But the government did not prove the elements necessary to bring Harris within the purview of the other subsections." Id. at 116. Implicit in that observation is the recognition that the government would have had to present relevant evidence to support the maximum sentence the provision would afford.

Given the structural similarity between section 20-179 and section 15A-1340.17, Harris indicates that the ACA prohibits sentencing Peebles beyond eight months unless the government had established the elements necessary for the aggravated range or Peebles's record level had been greater. Because neither occurred, Peebles's actual sentence of twelve months and one day was unlawful.

In sum, because North Carolina's statutory maximum sentence applicable to Peebles was eight months, the district court violated the ACA's "like punishment" requirement by sentencing Peebles to twelve months and one day. Thus, we vacate Peebles's sentence and remand for resentencing consistent with this opinion.[2]

REVERSED AND REMANDED WITH INSTRUCTIONS

---

[2] Peebles also challenges how the district court applied the U.S. Sentencing Guidelines. The court applied section 2A2.4 upon finding it "sufficiently analogous" to Peebles's crime of aggravated speeding to elude arrest. U.S. Sentencing Guidelines Manual § 2X5.1 [hereinafter "USSG"]. We decline to reach this issue because, assuming we found error, the resulting benefit would be trivial. See USSG § 5G1.1 ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."). Furthermore, our circuit precedent makes plain that the Guidelines by no means trump the ACA's "like punishment" requirement. See Young, 916 F.2d at 150 ("[T]he 'like punishment' requirement of the Assimilative Crimes Act mandates that federal court sentences for assimilated crimes must fall within the minimum and maximum terms established by state law, and that within this range of discretion federal judges should apply the Sentencing Guidelines to the extent possible.").

WILKINSON, Circuit Judge, dissenting:

I agree with the majority that an offense under the Assimilative Crimes Act (ACA), 18 U.S.C. § 13, may be punished only within the "the maximum term established by state law." U.S. v. Pierce, 75 F.3d 173, 176 (4th Cir. 1996). My concern is that Peebles's novel interpretation of that well-established principle disregards our precedent and creates a circuit split by requiring federal courts to apply state sentencing guidelines to individual defendants. The ACA requires only "like" -- not "identical" -- punishment. Every other court that has considered the interaction between federal and state sentencing practices for ACA purposes has rightly recognized that while the generic statutory ranges established by state substantive law limit the permissible ACA punishment, federal courts need not apply individualized state sentencing calculations. The sentence imposed here was reasonable, respected the state sentencing range for Class H felonies, and in no sense amounted to an abuse of discretion on the part of the district court. See Gall v. U.S., 552 U.S. 38 (2007). As a result, I respectfully dissent.[1]

---

[1] In an opening footnote, see Maj. Op. at 2 n.1, my good colleagues in the majority claim to uphold federal sentencing practice within the state sentence range, but the majority's three month "range" is so constricted that federal practice hardly applies. Contrary to the majority's protestations, (Continued)

10

Even the twelve month and one day sentence that Peebles would have us discard does not fully reflect the deadly nature of his crime. Certainly the proffered maximum sentence of eight months fails to do so in light of his potentially lethal behavior. Peebles led police on a high speed chase after refusing to pull over his motorcycle for traveling twenty miles per hour over the speed limit. Reaching speeds above one hundred miles per hour along the winding twists of the Blue Ridge Parkway, he fled for some twenty-five miles. Travelers on

individualized state sentencing comes so close to impermissible identicality as to render any distinction between the two negligible. See infra Part II.C. Second, the majority declares the maximum state sentence to be eight months, but that declaration begs the question of what state sentence ranges apply. Class H felonies are subject to a generic four to thirty month range under North Carolina law, and it is that range and that maximum, not individualized state procedures, that respects Congress's sentencing policy set forth in 18 U.S.C. § 3551(a). See infra Part II.A. Finally, the majority argues that a defendant "may be sentenced only in the way and to the extent that the person could have been sentenced in state court." U.S. v. Pierce, 75 F.3d 173, 176 (4th Cir. 1996). But immediately after that language, Pierce emphasized that "like punishment does not encompass every incident of a state's sentencing policy" and in fact affirmed the imposition of a federal term of supervised release under the ACA instead of requiring state probation. Id. at 176-77 (citation omitted). Nothing in Pierce or our other precedent elevates individualized state sentencing procedures above federal sentencing practice, see infra Part II.C. In doing so, the majority transforms the ACA from a gap filling statute into one of displacement, again in contravention of Congress's express intent in Section 3551(a). See infra Parts II.A and B.

the scenic byway were forced off the road. Peebles passed more than a dozen cars in no passing zones while narrowly missing head on collisions with two separate vehicles. His mad dash did not end until officers from the North Carolina Highway Patrol and the Alleghany County Sheriff's Department set up a rolling roadblock. Even then, Peebles was only captured when his motorcycle went off the road as he attempted to turn around to avoid the roadblock and continue his flight. Something is wrong when the twelve month and one day sentence of such a malefactor is reduced to a mere eight month maximum. What is wrong is appellant's view of the ACA.

## II.

Peebles claims the ACA's "like punishment" clause, codified in 18 U.S.C. § 13(a), requires us to follow state law right down to the individualized, defendant-specific provisions of North Carolina sentencing practice. But when we move from the generic range that a hypothetical defendant could receive under state law to the individualized North Carolina calculation that Peebles demands, we come perilously close to replacing the ACA's "like punishment" requirement with one of "identical punishment." Peebles's argument also ignores important guidance from other federal statutes, the history of the ACA itself, and the extensive caselaw of circuits across the country. The

12

better understanding of "like punishment" is that the ACA directs federal courts to sentence within the generic range of permissible state sentences that could be imposed on a hypothetical defendant but to follow federal sentencing policy so long as it consistent with that range.

A.

As an initial matter, the ACA's "like punishment" requirement must be interpreted in pari materia with 18 U.S.C. § 3551(a), which explains what types of sentences are authorized in federal courts. That section indicates that "a defendant who has been found guilty of an offense described in any Federal statute, including sections 13 and 1153 of this title . . . shall be sentenced in accordance with the provisions of this [federal sentencing] chapter so as to achieve the purposes set forth in [18 U.S.C. § 3553(a)(2)(A)-(D)]". 18 U.S.C. § 3551(a) (emphasis added). The emphasized reference to 18 U.S.C. § 13 (the ACA) was added by Congress in 1990 and makes explicit the fact that federal sentencing procedures apply to ACA crimes. See Pub. L. 101-647, § 1602, 104 Stat. 4789, 4843. Even before Congress added this reference, courts had already recognized that Section 3551(a) provides a statutory directive that federal sentencing practices apply to assimilated crimes. U.S. v. Marmolejo, 915 F.2d 981, 984 (5th Cir. 1990); U.S. v. Garcia,

13

893 F.2d 250, 253-54 (10th Cir. 1989).  Section 3551(a) thus gives the term "like punishment" a specific, limited meaning: within the generic state sentencing range assimilated by the ACA, federal sentencing policy determines the actual sentence. See, e.g., U.S. v. Pierce, 75 F.3d 175, 176 (4th Cir. 1996).

B.

Further, the legislative history of the ACA itself indicates that Peebles's interpretation of the ACA's "like punishment" clause cannot be correct.  Prior to 1909, the law that became the ACA required defendants convicted of assimilated crimes to "be liable to and receive the same punishment as the laws of the state."  Ch. 576, § 2, 30 Stat. 717, July 7, 1898 (emphasis added).  In 1909, however, the "same punishment" requirement was replaced with the current ACA formulation of "like punishment."  See Ch. 321, § 289, 35 Stat. 1145, Mar. 4, 1909.  This switch undercuts Peebles's assertion that federal courts must apply individualized state sentencing procedures. Now sentences need only be similar to what would be imposed in state court.  "The word 'like' in the current version of the ACA thus implies similarity, not identity."  Marmolejo, 915 F.2d at 984.  Peebles's contrary position may have been good law during Teddy Roosevelt's administration, but for over a century

14

Congress has required only "like punishment," which does not require reference to individualized state sentencing procedures.

Additionally, the purpose of the ACA suggests that Peebles mistakenly interprets the "like punishment" requirement. The ACA exists to fill gaps in federal criminal law so that wrongdoing on federal land can be punished even if Congress has not thought to criminalize a specific act. See, e.g., U.S. v. Gaskell, 134 F.3d 1039, 1042 (11th Cir. 1998) ("The purpose of the ACA is to provide a body of criminal law for federal enclaves by using the penal law of the local state to fill the gaps in federal criminal law.") (internal citations omitted); Garcia, 893 F.2d at 253 (same). Because the purpose of the ACA is gap filling, it is fair to infer that courts should only assimilate state law to the extent that there is no corresponding federal guidance. In the present case, there is no federal law of aggravated speeding to elude arrest, and the district court correctly assimilated that North Carolina crime. However, there are comprehensive federal sentencing laws, and it would be counterintuitive to overturn those federal procedures by incorporating individualized state sentencing through a mere gap filling measure.

15

C.

Peebles attempts to overcome the statutory obstacles of text, history, and purpose by claiming that our prior precedents, including United States v. Pierce, 75 F.3d 173 (4th Cir. 1996), United States v. Harris, 27 F.3d 111 (4th Cir. 1994), and United States v. Young, 916 F.2d 147 (4th Cir. 1990), suggest that "like punishment" requires individualized sentencing based on state law.  But those decisions actually buttress what 18 U.S.C. 3551(a) and the history of the ACA already make clear, indicating that the normal ACA practice is to use federal, not state, sentencing procedures to the fullest extent possible within the boundaries of assimilated substantive state law.  As Pierce explained, "state law may provide the mandatory maximum or minimum sentence, but the federal sentencing guidelines determine the sentence within these limits."  75 F.3d at 176.  Indeed, we noted in Young that "[t]he [Federal] Sentencing Reform Act and the [Federal] Sentencing Guidelines adopted thereunder apply to assimilated crimes," explicitly rejecting claims that federal judges should apply state sentencing practices to ACA offenses.  916 F.2d at 150. If Peebles is correct that individualized state sentences are required, he comes close to rendering the concept of "maximum or minimum" sentences irrelevant.  If he were arguing for a generic state law range, I would agree that the ACA requires federal

16

courts to sentence within such boundaries.  But he does not.
Peebles asks to be sentenced between an individualized "maximum" of eight and an individualized "minimum" of five months.  This so-called three month "range" is so defendant-specific when compared to the statutory four to thirty month range for a hypothetical Class H felon that it is nearly meaningless.

Peebles's argument also disregards the fact that we have rejected requests to incorporate the trappings of individualized state sentencing on previous occasions.  We have recognized that "[t]he phrase 'like punishment' . . . does not encompass every incident of a state's sentencing policy."  Harris, 27 F.3d at 115.  Far from it.  A federal court "will not assimilate a state sentencing provision that conflicts with federal sentencing policy."  Pierce, 75 F.3d at 176.  In Pierce, we went so far as to uphold a federal ACA sentence that included a term of supervised release, even though North Carolina sentencing law only provides for probation.  Id. at 177.  Even more importantly, we affirmed despite the fact that the supervised release term exceeded the maximum jail term allowed under state law because "supervised release is not considered to be a part of the incarceration portion of a sentence and therefore is not limited by the statutory maximum term of incarceration."  Id. at 178.  As a result, we declined to follow state probation rules and instead gave full force to federal sentencing policy within

17

the ACA's boundaries.  Id.  See also U.S. v. Engelhorn, 122 F.3d 508 (8th Cir. 1997) (same); U.S. v. Burke, 113 F.3d 211 (11th Cir. 1997) (per curiam) (same).

Peebles thus invites us to pick and choose the portions of state sentencing policy that we will now follow.  Under Pierce, federal supervised release trumps state probation rules, but without questioning that earlier holding, Peebles now promotes individualized state sentencing calculations over federal sentencing policy.  This approach can only result in complex, arbitrary, pick-and-choose distinctions.  To avoid this pitfall, courts have two choices: rewrite the ACA's statutory command of "like punishment" to read "identical punishment" or recognize that "like punishment" contemplates only that federal sentencing policy applies within the state's generic maximum and minimum sentence range.  Our case law correctly selects the latter approach, and there is no reason to revisit that choice.

## D.

Nor is our circuit an outlier.  Our sister circuits also recognize that federal -- rather than state -- sentencing procedures apply when calculating individual ACA sentences. See, e.g., U.S. v. Calbat, 266 F.3d 358, 362 (5th Cir. 2001) ("Consequently, state law fixes the range of punishment, but the Sentencing Guidelines determine the actual sentence within that

18

range.") (internal citation omitted); U.S. v. Queensborough, 227 F.3d 149, 160 (3d Cir. 2000) (same); U.S. v. Gaskell, 134 F.3d 1039, 1043, 45 (11th Cir. 1998) (same); U.S. v. Leake, 908 F.2d 550, 552 (9th Cir. 1990) (same); U.S. v. Garcia, 893 F.2d 250, 251-52 (10th Cir. 1989) (same); see also U.S. v. Norquay, 905 F.2d 1157, 1161-62 (8th Cir. 1990) (same in interpreting statutory provision similar to ACA). While many of the decisions from this and other circuits predate United States v. Booker, 543 U.S. 220 (2005), and its progeny, I do not think their basic teaching about federal sentencing practices is rendered in any way inapplicable by the fact that the Guidelines are presently advisory. See Gall v. U.S., 552 U.S. 38 (2007). If anything, the greater discretion now afforded district courts in sentencing would seem inconsistent with the strict handcuffs that Peebles would place upon them.

In addition to the widespread recognition that federal sentencing procedures apply to ACA crimes, other circuits also have taken the same approach as this court in declining to require adherence to state probation rules. See Gaskell, 134 F.3d at 1043 (citing and discussing Second, Ninth, and Tenth Circuit decisions). As the Ninth Circuit explained long ago, "[t]o hold otherwise would be to have two classes of prisoners serving in the federal prisons: Assimilative Crimes Act prisoners and all other federal prisoners. That situation would

19

be disruptive to correctional administration, and we do not think Congress intended this result." U.S. v. Smith, 574 F.2d 988, 992 (9th Cir. 1978). The two-tiered system for which Peebles argues cannot be what Congress intended, and "[e]fforts to duplicate every last nuance of the sentence that would be imposed in state court has never been required." Garcia, 893 F.2d at 254.

## III.

Peebles's error is further exacerbated by his misapprehension of the interaction between the ACA, 18 U.S.C. § 13, the assimilated crime of aggravated speeding to elude arrest, N.C. Gen. Stat. § 20-141.5, and the North Carolina structured sentencing statute, N.C. Gen. Stat. § 15A-1340.17. Peebles claims his federal sentence should be limited to the individual sentence a state judge would have imposed on him. But the ACA does not incorporate North Carolina structured sentencing. Instead it incorporates substantive offenses that "would be punishable if committed . . . within the jurisdiction of the State." 18 U.S.C. § 13(a).

As the majority acknowledges, the typical federal criminal statute specifies a maximum and a minimum penalty as part of the statutory definition of the offense. When an assimilated statute is structured similarly, the maximum and minimum ranges

20

apply, but federal courts are free to use federal sentencing practices within those boundaries. See, e.g., Queensborough, 227 F.3d at 160 (twenty year federal sentence valid when assimilated Virgin Islands law authorized ten years to life). In such a situation, whatever sentencing guidance the state may establish elsewhere is irrelevant for federal assimilation.

North Carolina law operates identically, though with less clarity than is typical. The substantive law merely defines Peebles's aggravated speeding offense as a "Class H felony." N.C. Gen. Stat. § 20-141.5(b). The authorized sentence range is then codified separately in tabular form. N.C. Gen. Stat. § 15A-1340.17(c) and (d). That table indicates that a Class H felony can be punished by four to thirty months. See N.C. Gen. Stat. § 15A-1340.17(c) and (d). North Carolina courts recognize that this range establishes the authorized maximum sentence, regardless of specific defendants' individual characteristics. See State v. Dewberry, 600 S.E.2d 866, 870 (N.C. App. 2004) ("The maximum sentence for a Class H felony is 30 months."); State v. Bernard, No. COA07-1289, 2008 WL 1948022, at *6 (N.C. App. May 6, 2008) (defendant considering self-representation warned that "speeding to elude is a Class H felony carrying a maximum punishment of 30 months."). See also U.S. v. Jones, 195 F.3d 205, 207 (4th Cir. 1999) ("viewing the class maximum as the

21

statutory maximum for the crime appears to accord . . . with the general practice in North Carolina courts").

North Carolina also chose to codify its state sentencing procedures in the same statute. This decision, however, does not alter the fact that the resultant law performs two independent and severable tasks. The first is to provide a generic reference table that categorizes the range of authorized penalties by felony class, in the case of a Class H felony up to thirty months. In addition to this initial function, the statute serves a secondary purpose of laying out the state's sentencing regime. While it is undisputed that Peebles would have received a sentence between five and eight months if sentenced under state sentencing guidelines in state court, federal courts are not required to adopt the identical local procedures in sentencing ACA defendants. The Class H felony punishment of up to thirty months is what is assimilated by the ACA, not every particular of state sentencing rules. See Garcia, 893 F.2d at 254.[2]

---

[2] Nor does the majority's contrary view do criminal defendants any favors. In many instances state sentencing law may provide for a harsher punishment than provided by federal sentencing policies. For instance, North Carolina sentencing procedures typically give judges unfettered discretion to decide whether sentences imposed for multiple counts should run concurrently or consecutively. See N.C. Gen. Stat. § 15A-1354. In contrast, federal policy generally favors concurrent sentences, albeit with some exceptions. See, e.g., U.S.S.G. (Continued)

22

In short, Peebles asks us to create a North Carolina anomaly that conflicts with the precedent of this and other circuits. Under the ACA, Peebles is only entitled to "like punishment," and that is precisely what the district court's sentence provided. By focusing on the individualized elements of state sentencing rules, appellant disregards the ACA's century-old "like punishment" requirement in favor of the "same punishment" phrasing rejected by Congress in 1909. The ACA "fills in gaps in federal criminal law." Garcia, 893 F.2d at 253 (citation omitted). It is not intended to displace the comprehensive federal sentencing practice with individualized state sentencing procedures. Pierce, 75 F.3d at 176 ("a federal court . . . will not assimilate a state sentencing provision that conflicts with federal sentencing policy."). And it certainly is not intended to impair the basic prerogative of the United States to ensure a modicum of public safety on federal lands and parkways. Other courts have been able to accommodate state sentencing ranges and this core federal concern, and I respectfully dissent from the failure to follow their example.

---

§ 5G1.2 (guideline for sentencing on multiple counts of conviction).

23