**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.                                                              No. 15-2119

RACHEL BASURTO,

        Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:13-CR-00969-JB-1)**
_____

John V. Butcher, Assistant Federal Public Defender, Office of the Federal
Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

James R.W. Braun, Assistant United States Attorney (Damon P. Martinez,
United States Attorney, Office of the United States Attorney, Albuquerque,
New Mexico, with him on the brief), for Plaintiff-Appellee.
_____

Before **MATHESON**, **SEYMOUR**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

        Ms. Rachel Basurto was convicted on federal drug charges. In light

of the conviction, the district court had to decide whether to impose a fine

and, if the court did so, to set the amount. Ms. Basurto's only source of

income was her monthly disability payments, but she and her husband owned a house unencumbered by a mortgage. Relying on Ms. Basurto's co-ownership of the house, the district court imposed a fine of $13,133.33, reasoning that Ms. Basurto could pay this amount by selling the house or obtaining a loan.[1] Ms. Basurto appeals the fine, arguing that it is procedurally unreasonable. We affirm.

## I.     Ms. Basurto asserts four challenges to the fine.

On appeal, Ms. Basurto brings four challenges to the fine[2]:

1.    In finding that Ms. Basurto is able to pay the fine, the district court erroneously relied on Ms. Basurto's ability to sell or mortgage her house.

2.    In assessing Ms. Basurto's ability to pay, the district court did not account for the hardship to Ms. Basurto.

---

[1]    To calculate the fine, the district court

- valued the house at its tax-assessment value, $33,689,

- subtracted a 6% realtor fee,

- halved this figure to account for the husband's interest in the house, and

- subtracted Ms. Basurto's existing liabilities ($2,500) and court-imposed special assessments ($200).

Based on these calculations, the district court imposed a $13,133.33 fine.

[2]    On appeal, Ms. Basurto refers to the Eighth Amendment's Excessive Fines Clause. *See* Appellant's Opening Br. at 43-45, 48, 50. We do not interpret these references as a separate appeal point.

3. The district court clearly erred by relying on facts that (a) the family members living with Ms. Basurto had known about and could have prevented her crimes and (b) the house had been used to facilitate the crimes.

4. The district court did not account for the increased risk of recidivism posed by the fine.

We reject each challenge.

## II. We consider whether the district court abused its discretion.

We review the reasonableness of the district court's decision to impose a fine under the abuse-of-discretion standard. *United States v. Lopez-Macias*, 661 F.3d 485, 488-89 (10th Cir. 2011). "Reasonableness has both procedural and substantive components." *United States v. Cage*, 451 F.3d 585, 591 (10th Cir. 2006).

Ms. Basurto characterizes her challenges to the fine as procedural. This characterization is correct because Ms. Basurto challenges the method that the district court used in calculating the fine. *See id.*

In assessing her procedural challenge, we can disturb the district court's factual findings only if they are clearly erroneous. *United States v. Trujillo*, 136 F.3d 1388, 1398 (10th Cir. 1998). But the district court's legal conclusions are subject to de novo review. *United States v. Ray*, 704 F.3d 1307, 1315 (10th Cir. 2013).

### III. The district court found that Ms. Basurto had not proven an inability to pay the fine.

The U.S. Sentencing Guidelines authorize district courts to impose fines except when defendants establish that they are unable to pay and unlikely to obtain that ability. U.S.S.G. § 5E1.2(a) (2014).[3] Applying this authority, the district court found that Ms. Basurto could raise the money for the fine by selling her house or obtaining a loan with the house as collateral.

According to Ms. Basurto, the district court's findings are clearly erroneous. According to Ms. Basurto, she cannot sell the house because state law prohibits a sale unless Ms. Basurto's husband consents. *See* N.M. Stat. Ann. § 40-3-13(A) (voiding the sale of real property that spouses own as community property without both spouses' consent). Ms. Basurto contends that (1) she does not know where her husband is and (2) even if he could be located, he would probably not consent to a sale.[4]

Ms. Basurto acknowledges that state law provides a statutory procedure permitting a sale without spousal consent if a spouse has

---

[3] Section 5E1.2(a) states that the district court "shall" impose a fine unless the defendant establishes an inability to pay, but the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) rendered the Guidelines advisory.

[4] Ms. Basurto believes that Mr. Basurto currently resides in Mexico, but she has not had any contact with him since 2003, when he went to Mexico.

4

disappeared. *See* N.M. Stat. Ann. § 40-3-16. But Ms. Basurto contends that she does not know how to carry out the statutory procedure on her own, cannot afford to hire an attorney to assist in carrying out the statutory procedure, and cannot meet all of the statutory requirements. Ms. Basurto also argues that no one would loan her money because of legal uncertainty over the ability to sell the house and Ms. Basurto's lack of income. We reject these contentions because the district court could have reasonably concluded from the sparse evidence that Ms. Basurto could (1) satisfy the statutory procedure for a sale without her husband's participation or, in the alternative, (2) obtain her husband's consent to a sale.

First, New Mexico law provides a statutory procedure allowing the sale of jointly owned property "[i]f a spouse disappears and his location is unknown to the other spouse." N.M. Stat. Ann. § 40-3-16(A). Though Ms. Basurto argues that she lacks the legal knowledge required to comply with the statutory procedure, the district court could reasonably conclude that legal knowledge was unnecessary. The New Mexico law allows Ms. Basurto to sell jointly owned property upon completion of five tasks:

1. File a petition stating why the transaction would be desirable for Ms. Basurto.

2. Obtain court appointment of a guardian ad litem for the absent husband and pay this guardian a "reasonable fee."

3. Serve a notice of hearing on the guardian ad litem.

5

4. Publish four weekly notices of hearing in a newspaper of general circulation in the county where the petition is pending.

5. Obtain a court order authorizing the transaction based on a finding that the husband disappeared.

N.M. Stat. Ann. § 40-3-16.

The district court did not abuse its discretion by considering Ms. Basurto capable of performing these five tasks. Though Ms. Basurto cannot afford an attorney, the statutory procedure is relatively straightforward and Ms. Basurto did not present any evidence of an inability to carry out the statutory procedure.

Ms. Basurto also argues that she cannot comply with the statutory procedure because she (1) would not be able to prove that her husband's location is "unknown to anyone" and (2) cannot afford the non-attorney costs associated with the procedure, such as publishing notices in a local newspaper. Appellant's Opening Br. at 28. These arguments are unconvincing. The statutory procedure requires only that a spouse's location is "unknown to the other spouse [Ms. Basurto]"; the statute does not require Ms. Basurto to prove that her husband's location is unknown to anyone. N.M. Stat. Ann. § 40-3-16(A). And Ms. Basurto presented no evidence showing that she cannot afford the costs associated with the statutory procedure. Thus, the district court could reasonably infer that Ms. Basurto would be able to use the statutory procedure to sell the house without her husband's consent.

6

Second, Ms. Basurto could sell the home if she obtained her husband's consent. Ms. Basurto contends that securing her husband's consent would be difficult given the husband's unknown location. But the record does not show that Ms. Basurto ever attempted to contact her husband, much less that she was unable to locate him or to obtain his consent. In fact, Ms. Basurto's appeal briefs suggest the opposite: Ms. Basurto states that one of her daughters has been in contact with Mr. Basurto, that Mr. Basurto has a son who "could possibly provide his father's location," and that Ms. Basurto "will probably not be able to prove Mr. Basurto has disappeared and his location is unknown to anyone." Appellant's Opening Br. at 7, 28-29. Accordingly, Ms. Basurto has not met her burden to prove an inability to obtain her husband's consent to a sale.

The district court also had discretion to rely on Ms. Basurto's ability to obtain a loan with the house as collateral. The district court could have reasonably found that

1.   Ms. Basurto could obtain a loan with the house as collateral and

2.   the house's value was enough to secure the principal on a loan for the amount of the fine.

Ms. Basurto contends that she would be considered a high credit risk. But Ms. Basurto did not present any evidence suggesting that lenders would hesitate to loan money with the house as collateral.

Ms. Basurto relies on two categories of cases: (1) cases holding that courts cannot impose fines when the defendant's assets are unproven or when the defendant's future ability to pay is based merely on chance[5] and (2) cases considering the need to appoint counsel when a criminal defendant is indigent.[6]

The first line of cases is inapplicable because the district court did not base the fine on an unproven asset or on speculation about possible winnings. Rather, the district court based the fine on the house that Ms. Basurto currently owns, which has a tax-assessment value of $33,689. And Ms. Basurto did not present any evidence suggesting that she is unable to sell her house or obtain a loan with the house as collateral.

The second line of cases indicates that the court should inquire into the actual availability of a defendant's uncertain assets. These cases do not

---

[5]   *See, e.g.*, *United States v. Wong*, 40 F.3d 1347, 1383 (2d Cir. 1994) (concluding that the district court erred by basing the defendant's future ability to pay on the possibility that the defendant might win the lottery); *United States v. Granados*, 962 F.2d 767, 774 (8th Cir. 1992) (remanding for reconsideration of the defendant's ability to pay a fine based on the value of his house because his equity in the house was unknown); *United States v. Washington-Williams*, 945 F.2d 325, 327 (10th Cir. 1991) (concluding that the district court erred because the defendant had shown that she no longer had any equity in the rental property relied upon by the district court).

[6]   *See, e.g.*, *United States v. Barcelon*, 833 F.2d 894, 898 (10th Cir. 1987) (holding that in considering whether the defendant was entitled to appointment of counsel, the court could rely on the potential repayment of a $20,000 gambling debt, but only upon inquiry into the likelihood of repayment).

apply because Ms. Basurto does not question the value of her equity interest in the house and the district court specifically addressed Ms. Basurto's ability to pay the fine based on her equity in the house. Though Ms. Basurto questioned her ability to sell the house or to obtain a loan, she did not present any evidence to this effect.

Based on the evidence presented, the district court acted within its discretion in imposing the $13,133.33 fine.

## IV. The district court did not err when analyzing the hardship that the fine imposed on Ms. Basurto.

The district court reasoned that the hardship to Ms. Basurto and her ability to pay are separate inquiries:

> Once the Court decided that–despite [Ms. Basurto's] minimal assets, the third parties living in [Ms. Basurto's] home, and the other factors–it should fine her, the burden shifted to [Ms.] Basurto to prove she could not afford to pay that fine. . . . While the difficulty a fine will cause is certainly relevant when she is arguing that the Court should not impose a fine, it is not relevant once the Court decides to impose a fine. At that stage, difficulty to the defendant is not the issue; the sole issue is whether [Ms. Basurto] can pay the fine.

R., vol. I at 254. Ms. Basurto challenges this reasoning, arguing that the district court should have treated hardship as part of the ability-to-pay analysis.[7] According to Ms. Basurto, hardship is a necessary component of that analysis. We conclude that the district court did not err.

---

[7]      In her reply brief, Ms. Basurto offers a different interpretation of the district court's language; she argues that this language suggests that hardship is immaterial regarding the amount of the fine. But Ms. Basurto

9

In deciding whether to impose a fine and how much the fine should be, the district court must consider the sentencing factors in 18 U.S.C. § 3572(a).[8] Section 3572(a) requires the district court to consider factors including the defendant's income, earning capacity, financial resources, and the burden of the fine on the defendant. 18 U.S.C. § 3572(a)(1)-(2). Similarly, the guidelines require the district court to consider the defendant's ability to pay and the burden on the defendant. U.S.S.G. § 5E1.2(a), (d)(2)-(3) (2014).

Ms. Basurto contends that hardship could affect her ability to pay. We disagree. The statutory provisions and the guidelines separately list the defendant's ability to pay and the hardship the fine would impose. Ms. Basurto elsewhere recognizes this distinction, stating that "[t]he [sentencing] factors that must be considered also include those specific to fines: the defendant's ability to pay, which is determined by the defendant's income, earning capacity, and financial resources, 18 U.S.C. § 3572(a)(1), U.S.S.G. § 5E1.2(d)(2); [and] the hardship the fine will impose upon the defendant, her family and her financial resources,

did not raise this interpretation of the district court's language until her reply brief. As a result, we decline to consider this argument. *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (declining to consider an argument omitted in the appellant's opening brief).

[8] The district court was also required to consider the sentencing factors in 18 U.S.C. § 3553(a). But the district court's consideration of the factors in § 3553(a) is not at issue in this appeal.

10

§ 3572(a)(2), § 5E1.2(d)(3) & (8) . . . ." Appellant's Opening Br. at 44. As Ms. Basurto implicitly admits in this passage, hardship and ability to pay are distinct considerations.

The district court recognized this distinction by explaining that hardship does not affect Ms. Basurto's ability to pay, for she either can pay the fine or she can't. As a result, the district court did not err when treating ability to pay and hardship as separate inquiries.

**V.** **The district court did not rely on clearly erroneous facts in finding that (1) Ms. Basurto's family had known about her drug activity and (2) Ms. Basurto's house was connected to her drug activity.**

A district court errs procedurally when it imposes a fine based on clearly erroneous facts. *United States v. Lente*, 647 F.3d 1021, 1030 (10th Cir. 2011). Ms. Basurto argues that the district court clearly erred by relying on two facts: (1) the family members living with Ms. Basurto had known about the illegal drug activity and could have stopped it, and (2) Ms. Basurto's house had been connected to her illegal behavior.[9] In our view, these factual findings were not clearly erroneous.

---

[9] Ms. Basurto also argues that the district court clearly erred by relying on the possibility that Ms. Basurto would be able to sell or mortgage her home. These arguments are addressed above in Part III.

11

The record includes three facts supporting the district court's finding that several of Ms. Basurto's family members were aware of Ms. Basurto's drug activity.[10]

First, Ms. Basurto's daughter knew the combination to a safe in the house that contained methamphetamine, cash, a handgun, and a key to another safe containing more cash. R., vol. II at 6-7. In fact, the daughter

- opened the safe for the police because Ms. Basurto had claimed that she did not know the combination and

- claimed that some of the cash from the safe was hers.

Second, methamphetamine was found in the son-in-law's car.

Third, Ms. Basurto kept items consistent with drug dealing—a scale, small plastic baggies, and a razor blade—in plain view in her bedroom.

Based on these three facts, the district court could have reasonably found that several of Ms. Basurto's family members had known about the drug activity and chose to continue residing with Ms. Basurto anyway.

In addition, the district court could have reasonably found that Ms. Basurto had used her house to "further [her] drug dealing enterprise[]." R., vol. I at 251. As noted, Ms. Basurto kept cash, drugs, and a handgun in her house. Even if Ms. Basurto conducted drug transactions elsewhere, the

---

[10]     Ms. Basurto's one-year-old granddaughter also lived with Ms. Basurto. Ms. Basurto argues that "of course . . . [the] granddaughter was completely innocent." Appellant's Opening Br. at 47-48. The granddaughter's presence in the house does not affect our analysis.

district court did not clearly err by finding that Ms. Basurto's house had played a role in the illegal activity.

We conclude that the district court did not clearly err in finding that (1) Ms. Basurto's live-in family members had known of the drug crimes, and (2) Ms. Basurto's house had been connected to the drug crimes.

## VI. The district court did not abuse its discretion by failing to address the risk of recidivism caused by the fine.

Ms. Basurto also argues that the district court failed to consider that imposing a fine would increase her risk of recidivism. This argument relates to the district court's general discretion to weigh the sentencing factors and impose a fine. *See* 18 U.S.C. § 3553(a)(2)(B)-(C). The $13,133.33 fine fell within the guideline range. As a result, the court needed only to provide a general statement of reasons for the fine. *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007).

The district court entertained Ms. Basurto's sentencing arguments, holding two sentencing hearings, ordering and reviewing supplemental briefing, providing a general statement of reasons for imposing the fine, and stating that the relevant sentencing factors had been considered. Thus, the court showed that it had considered the sentencing factors. *See id.* at 1200 (stating that we must respect Congress's decision not to require specificity for sentencing decisions within the guidelines); *United States v. Jarrillo-Luna*, 478 F.3d 1226, 1229 (10th Cir. 2007) (rejecting the

13

defendant's argument that "a district court must address each and every argument for leniency that it rejects in arriving at a reasonable sentence"), *overruled on other grounds by United States v. Lopez-Macias*, 661 F.3d 485 (10th Cir. 2011). In considering the sentencing factors, the district court expressly considered the recidivism risk posed by the fine and accounted for the possibility that a large fine might "nudge [Ms. Basurto] into further profit-bearing criminal activity that she might not otherwise commit." Supp. R. at 23.

The district court did not abuse its discretion by omitting discussion of the risk of recidivism from imposition of the fine.

## VII. Disposition

We affirm.