**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.                                                                      No. 15-2119

RACHEL BASURTO,

     Defendant - Appellant.

_____

**ORDER**
_____

Before **MATHESON**, **SEYMOUR**, and **BACHARACH**, Circuit Judges.
_____

This matter is before the court on appellant's *Petition for Rehearing En Banc and Panel Rehearing.* Upon consideration by the original panel members, the request for panel rehearing is granted to the extent of the amendments made to the attached revised decision.

The petition and the revised opinion were also circulated to all of the judges of the court who are in regular active service. As no member of the panel and no judge in regular active service on the court requested a poll, the request for en banc reconsideration is denied.

The clerk of court is directed to file the amended Opinion forthwith.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

RACHEL BASURTO,

     Defendant - Appellant.

No. 15-2119

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:13-CR-00969-JB-1)**
_____

John V. Butcher, Assistant Federal Public Defender, Office of the Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

James R.W. Braun, Assistant United States Attorney, (Damon P. Martinez, United States Attorney, with him on the brief) Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **MATHESON**, **SEYMOUR**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

Ms. Rachel Basurto was convicted on federal drug charges. In light of the conviction, the district court had to decide whether to impose a fine and set the amount. Ms. Basurto's only sources of income were her

monthly disability payments, but she and her husband owned a house unencumbered by a mortgage. Relying on Ms. Basurto's co-ownership of the house, the district court imposed a fine of $13,133.33, reasoning that Ms. Basurto could pay this amount by selling the house or obtaining a loan with the house as collateral.[1] Ms. Basurto appeals the fine, arguing that it is procedurally unreasonable. We affirm.

## I.    Ms. Basurto asserts five challenges to the fine.

On appeal, Ms. Basurto brings five challenges to the fine[2]:

1.    The district court failed to consider arguments that Ms. Basurto could not sell the house.

2.    The district court erred in finding that Ms. Basurto could obtain a loan with the house as collateral.

3.    In assessing Ms. Basurto's ability to pay a fine, the district court should have considered the hardship to Ms. Basurto.

---

[1]    To calculate the fine, the district court

- valued the house at its tax-assessment value, $33,689,

- subtracted a 6% realtor fee,

- halved this figure to account for the husband's interest in the house, and

- subtracted Ms. Basurto's existing liabilities ($2,500) and court-imposed special assessments ($200).

Based on these calculations, the district court imposed a $13,133.33 fine.

[2]    On appeal, Ms. Basurto refers to the Eighth Amendment's Excessive Fines Clause. *See* Appellant's Opening Br. at 43-45, 48, 50. We do not interpret these references as a separate appeal point.

4. The district court clearly erred by relying on facts that (a) the family members living with Ms. Basurto had known about and could have prevented her crimes and (b) the house had been used to facilitate the crimes.

5. The district court did not account for the increased risk of recidivism posed by the fine.

We reject each challenge.

## II. We consider whether the district court abused its discretion.

We review the reasonableness of the district court's decision to impose a fine under the abuse-of-discretion standard. *United States v. Lopez-Macias*, 661 F.3d 485, 488-89 (10th Cir. 2011). "Reasonableness has both procedural and substantive components." *United States v. Cage*, 451 F.3d 585, 591 (10th Cir. 2006).

Ms. Basurto characterizes her challenges to the fine as procedural. This characterization is correct because Ms. Basurto challenges the method that the district court used in calculating the fine. *See id.*

In assessing her procedural challenge, we can disturb the district court's factual findings only if they are clearly erroneous. *United States v. Trujillo*, 136 F.3d 1388, 1398 (10th Cir. 1998). But the district court's legal conclusions are subject to de novo review. *United States v. Ray*, 704 F.3d 1307, 1315 (10th Cir. 2013).

3

## III. The district court did not fail to consider arguments regarding Ms. Basurto's inability to sell the house.

The U.S. Sentencing Guidelines authorize district courts to impose fines except when defendants establish that they are unable to pay and unlikely to obtain that ability. U.S.S.G. § 5E1.2(a) (2014).[3] Applying this authority, the district court found that Ms. Basurto could pay a fine by selling her house.

According to Ms. Basurto, the district court failed to consider impediments preventing her from selling the house. For example, she argued in district court that state law prevented her from selling the house without her husband's consent, that she did not know where her husband was,[4] and that he probably would not consent to a sale. *See* N.M. Stat. Ann. § 40-3-13(A) (voiding the sale of real property that spouses own as community property without both spouses' consent). After defense counsel presented these arguments, the district court found that Ms. Basurto probably would need to sell the house even in the absence of a fine. R. at 347.

---

[3] Section 5E1.2(a) states that the district court "shall" impose a fine unless the defendant establishes an inability to pay, but the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) rendered the Guidelines advisory.

[4] Ms. Basurto believed that Mr. Basurto was residing in Mexico, but she had not had any contact with him since 2003, when he went to Mexico.

4

It is true that the district court's written opinion did not make specific findings on Ms. Basurto's arguments. But there was no need for such findings. *See United States v. Trujillo*, 136 F.3d 1388, 1398 (10th Cir. 1998) (addressing ability to pay and concluding that express findings as to each statutory factor are not required prior to the imposition of a fine); *United States v. Washington-Williams*, 945 F.2d 325, 327-28 (10th Cir. 1991) (holding that express findings are unnecessary on ability to pay a fine under U.S.S.G. § 5E1.2); *United States v. Wright*, 930 F.2d 808, 810 (10th Cir. 1991) ("Specific fact-finding on the record has been deemed unnecessary for imposition of fines under [a prior version of 18 U.S.C. § 3572, which set out the factors governing imposition of a fine]."). "It is sufficient that the record reflects the basis for the imposition of a fine." *United States v. Trujillo*, 136 F.3d 1388, 1398 (10th Cir. 1998).

The district court entertained Ms. Basurto's sentencing arguments, holding two sentencing hearings, ordering and reviewing supplemental briefing, providing a general statement of reasons for imposing the fine, and stating that the relevant sentencing factors had been considered. We have no reason to believe that the district court ignored Ms. Basurto's arguments against a fine.

**IV.    The district court did not clearly err in finding that Ms. Basurto could obtain a loan with the house as collateral.**

Ms. Basurto also challenges the finding regarding her ability to obtain a loan with the house as collateral. But this finding was not clearly erroneous.

Ms. Basurto argues that she could not obtain a loan because she is indigent. But this argument overlooks the fact that she co-owns a house unencumbered by a mortgage. Ms. Basurto's co-ownership of the house provided her with collateral to offer a lender.

According to Ms. Basurto, she could not use the house as collateral because state law prohibits sale of the house without her husband's consent. Thus, Ms. Basurto argues, "[t]he chances of not being able to liquidate the home would be too great."[5] Appellant's Opening Br. at 33. In our view, however, the district court could reasonably reject this argument.

State law provides a statutory procedure allowing married individuals to sell marital property when their spouses disappear. *See* N.M. Stat. Ann. § 40-3-16.  If Ms. Basurto did not know where her husband was, she could sell the house without his consent upon completion of five tasks:

1.    File a petition stating why the transaction would be desirable.

---

[5]    State law would also prohibit Ms. Basurto from mortgaging the house without spousal consent, but Ms. Basurto does not argue this point. *See* N.M. Stat. Ann. § 40-3-13(A).

6

2.  Obtain court appointment of a guardian ad litem for the absent husband and pay this guardian a "reasonable fee."

3.  Serve a notice of hearing on the guardian ad litem.

4.  Publish four successive weekly notices of hearing in a newspaper of general circulation in the county where the petition was pending.

5.  Obtain a court order authorizing the transaction based on a finding that the husband had disappeared.

N.M. Stat. Ann. § 40-3-16.

The district court could reasonably consider Ms. Basurto capable of performing these five tasks. Even if Ms. Basurto could not afford an attorney, the statutory procedure is relatively straightforward and Ms. Basurto did not present any evidence of an inability to carry out the statutory procedure.

Ms. Basurto argues elsewhere that she could not comply with the statutory procedure because she (1) would not be able to prove that her husband's location was "unknown to anyone" and (2) could not afford the non-attorney costs associated with the procedure, such as publishing notices in a local newspaper. Appellant's Opening Br. at 28.[6] The district court could reasonably reject these arguments. The statutory procedure required only that a spouse's location was "unknown to the other spouse [Ms. Basurto]"; the statute did not require Ms. Basurto to prove that her

---

[6]  Ms. Basurto presented these arguments when stating that the district court had disregarded her contentions about an inability to sell the house.

7

husband's location was unknown to anyone. N.M. Stat. Ann. § 40-3-16(A). And Ms. Basurto presented no evidence of an inability to pay the costs associated with the statutory procedure.

Ms. Basurto would not need to use the statutory procedure if the husband consented to a sale. According to Ms. Basurto, spousal consent was impossible because she did not know where the husband was. But the record does not show that Ms. Basurto ever attempted to contact her husband, much less that she was unable to locate him or obtain his consent. In fact, Ms. Basurto's appeal briefs suggest the opposite: Ms. Basurto states that one of her daughters has been in contact with the husband, that Mr. Basurto has a son who "could possibly provide [the husband's] location," and that Ms. Basurto "will probably not be able to prove [the husband] has disappeared and his location is unknown to anyone." Appellant's Opening Br. at 7, 28-29.

In these circumstances, the district court could reasonably conclude that a lender would be willing to loan money to Ms. Basurto with the house as collateral. Ms. Basurto disagrees, contending that she would be considered a poor credit risk. But Ms. Basurto did not present any evidence of a difficulty in obtaining a loan. In the absence of such evidence, the district court could reasonably infer that Ms. Basurto would be able to obtain a loan since she could provide her house as collateral. As a result,

8

the court did not clearly err in finding that Ms. Basurto could obtain a loan with her unencumbered co-ownership of the house.

## V. The district court did not err when analyzing the hardship that the fine imposed on Ms. Basurto.

The district court reasoned that the hardship to Ms. Basurto and her ability to pay are separate inquiries:

> Once the Court decided that–despite [Ms. Basurto's] minimal assets, the third parties living in [Ms. Basurto's] home, and the other factors–it should fine her, the burden shifted to [Ms.] Basurto to prove she could not afford to pay that fine. . . . While the difficulty a fine will cause is certainly relevant when she is arguing that the Court should not impose a fine, it is not relevant once the Court decides to impose a fine. At that stage, difficulty to the defendant is not the issue; the sole issue is whether [Ms. Basurto] can pay the fine.

R., vol. I at 254. Ms. Basurto challenges this reasoning, arguing that the district court should have treated hardship as part of the ability-to-pay analysis. Appellant's Opening Br. at 34-37.[7] We conclude that the district court did not err.

---

[7] In her reply brief, Ms. Basurto offers a different interpretation of the district court's language, arguing that the district court incorrectly reasoned that hardship is immaterial regarding the amount of the fine. But Ms. Basurto did not raise this interpretation of the district court's language until her reply brief. As a result, we decline to consider this argument. *See United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (declining to consider an argument omitted in the appellant's opening brief).

In deciding whether to impose a fine and set the amount, the district court must consider the sentencing factors in 18 U.S.C. § 3572(a).[8] Section 3572(a) requires the district court to consider factors including the defendant's income, earning capacity, financial resources, and the burden of the fine on the defendant. 18 U.S.C. § 3572(a)(1)-(2) (2012). Similarly, the guidelines require the district court to consider the defendant's ability to pay and the burden on the defendant. U.S.S.G. § 5E1.2(a), (d)(2)-(3) (2014).

The district court complied with the statute and guidelines by considering hardship in determining whether to impose a fine. As noted above, the court expressly stated that it had decided to impose a fine only after considering "the difficulty a fine will cause." R., vol. I at 254. The court simply noted that ability to pay and hardship are distinct inquiries, and they are. Ms. Basurto elsewhere recognizes this distinction, stating that "[t]he [sentencing] factors that must be considered also include those specific to fines: the defendant's ability to pay, which is determined by the defendant's income, earning capacity, and financial resources, 18 U.S.C. § 3572(a)(1), U.S.S.G. § 5E1.2(d)(2); [and] the hardship the fine will impose upon the defendant, her family and her financial resources,

---

[8] The district court was also required to consider the sentencing factors in 18 U.S.C. § 3553(a). The district court's consideration of the factors in § 3553(a) is not at issue in this appeal.

10

§ 3572(a)(2), § 5E1.2(d)(3) & (8) . . . ." Appellant's Opening Br. at 44. As Ms. Basurto implicitly admits in this passage, hardship and ability to pay are distinct considerations.

In her briefs and petition for rehearing, Ms. Basurto suggested a parade of horribles if the court ignores hardship in deciding whether to impose a fine. But the district court did not ignore the hardship; the court simply observed the differences between the factors involving ability to pay and hardship. Thus, we reject Ms. Basurto's challenge to the district court's decision to impose a fine.

**VI.     The district court did not rely on clearly erroneous facts in finding that (1) Ms. Basurto's family had known about her drug activity and (2) Ms. Basurto's house was connected to her drug activity.**

A district court errs procedurally when it imposes a fine based on clearly erroneous facts. *United States v. Lente*, 647 F.3d 1021, 1030 (10th Cir. 2011). Ms. Basurto argues that the district court clearly erred by relying on two facts: (1) the family members living with Ms. Basurto had known about the illegal drug activity and could have stopped it, and (2) Ms. Basurto's house had been connected to her illegal behavior. In our view, these factual findings were not clearly erroneous.

11

The record includes three facts supporting the district court's finding that several of Ms. Basurto's family members had been aware of Ms. Basurto's drug activity.[9]

First, Ms. Basurto's adult daughter knew the combination to a safe in the house that contained methamphetamine, cash, a handgun, and a key to another safe containing more cash. R., vol. I at 277-78. In fact, the daughter

- opened the safe for the police because Ms. Basurto had claimed that she did not know the combination and

- claimed that some of the cash from the safe was hers.

Second, methamphetamine was found in the son-in-law's car.

Third, Ms. Basurto kept items consistent with drug dealing—a scale, small plastic baggies, and a razor blade—in plain view in her bedroom.

Based on these three facts, the district court could reasonably find that several of Ms. Basurto's family members had known about the drug activity and chose to continue residing with Ms. Basurto anyway.

In addition, the district court could reasonably find that Ms. Basurto had used her house to "further [her] drug dealing enterprise[]." Supp. R. at 71. As noted, Ms. Basurto kept cash, drugs, and a handgun in her house.

---

[9]    Ms. Basurto's one-year-old granddaughter also lived with Ms. Basurto. Ms. Basurto argues that "of course . . . [the] granddaughter was completely innocent." Appellant's Opening Br. at 47-48. The granddaughter's presence in the house does not affect our analysis.

Even if Ms. Basurto had conducted drug transactions elsewhere, the district court could reasonably infer that Ms. Basurto's house had played a role in the illegal activity.

Accordingly, we conclude that the district court did not clearly err in finding that (1) Ms. Basurto's live-in family members had known of the drug crimes and (2) Ms. Basurto's house had been connected to the drug crimes.

## VII. The district court did not abuse its discretion by failing to address the risk of recidivism caused by the fine.

Ms. Basurto also argues that the district court failed to consider the risk that the fine would result in recidivism. As discussed above, however, specific findings were unnecessary. *See* Part III, above.[10] Thus, the district court did not err by omitting findings on the risk of recidivism from a fine.

## VIII. Disposition

We affirm.

---

[10] In considering the sentencing factors, the district court expressly considered the recidivism risk posed by the fine and accounted for the possibility that a large fine might "nudge [Ms. Basurto] into further profit-bearing criminal activity that she might not otherwise commit." Supp. R. at 23.